## Hickman County v. Viverett.

### (Decided April 22, 1914.)

### Appeal from Hickman Circuit Court.

1. Roads—Public Roads—Ditch Made in by Adjoining Land Owner —When Overseer May Authorize.—Although by a statute of this State the fiscal court of each county is given control of the public roads thereof and authority to prescribe rules and regulations for maintaining them, where such court merely requires the county roads to be kept in order by overseers appointed by the county court, with the hands allotted by that court to do the work; an overseer has the power to authorize an adjacent land owner to make a ditch in a public road under such overseer's control, when, in the judgment of the overseer, such ditch is necessary to drain a mudhole or pond in the road which constitutes an obstruction to its use by the public, or its presence in the road causes its waters or surface waters, in times of excessive rainfalls, to run from the road in unusual quantities upon the adjacent land of such owner.

2. Roads—Action for Damages by County Against Maker of Ditch in Public Road—When Recovery Will Not Be Allowed.—When, for the purpose stated above, a ditch is made in the public road by an adjacent land owner, with the consent of the overseer and in the manner directed or assented to by him, the maker of the ditch will not be liable in an action for damages brought against him by the county for making the ditch; and this is so where it is made to appear that a bad condition of the road subsequently resulting from the existence of the ditch, was caused by the failure of the county or overseer to keep the road in repair, rather than from any defect in the construction of the ditch.

J. D. VIA for appellant.

BENNETT, ROBBINS & THOMAS for appellee.

Opinion of the Court by Judge Settle—Affirming.

This action was brought by the appellant, Hickman County, to recover of appellee damages, laid at $225.00, for injuries caused to a county road, known as the "Clinton and Spring Hill Public Road," by his wrongfully digging, as alleged, a ditch in and upon the side thereof in such a manner as to divert and cause an increased flow of surface water upon the road, produce gullies therein, render it impassible and compel the appellant to change, at that point, its bed and purchase additional ground for that purpose, at a total cost to it of $225.00.

The answer of appellee admitted the digging of the ditch, but denied that the work was done in such a manner as to injure the road, render it impassible or cause the county to change its bed or purchase land for that purpose, at a cost of $225.00, or any other sum. Alleged that the digging of the ditch was done by appellee with the consent and as directed by the judge of the Hickman County Court and overseer of the road; and that the ditch was made more than five years before the institution of the action, for which reason, even if the alleged injuries complained of by appellant had been caused to the road, any right of action it may have had therefor, was barred by the statute of limitations, which was formally pleaded.

Appellant demurred to such parts of the answer as pleaded authority from the county judge and overseer for the digging of the ditch by appellee, but the demurrer was overruled, to which ruling it excepted and by reply controverted the affirmative matter of the answer. The trial resulted in a verdict for appellee, and the circuit court's refusal of a new trial to appellant led to this appeal.

It appears from the evidence furnished by the record that the ditch in question was made by appellee six or seven years before the institution of this action; that it is about one hundred feet in length and lies along the line of appellee's fence separating his field from the public road. It is apparent from the evidence that the ditch was made, and was necessary, to drain a large mudhole, rapidly approaching the dimensions of a small pond, which had for years been forming and standing in a depression of the road on a hill or ridge, making a miry place almost impassible for vehicles and horsemen and causing, during excessive rains, an increased and

unusual flow of its waters and additional surface water upon appellee's adjoining field. It is not apparent from the evidence that any quicker or more efficient method of draining the mudhole and restoring the road to a reasonably good condition could have been resorted to than the digging of the ditch which was, at the time, neither wider nor deeper than was necessary for draining the mudhole and properly carrying the water therefrom and surface water from the road, that would otherwise have run in unusual quanitities upon appellee's field; the throwing of the dirt from the ditch on the side next to his fence aiding materially in preventing the latter trouble. The ditch ended at a point where the water was emptied therefrom into a branch running through another part of appellee's field, which was its natural outlet and deep and wide enough to accommodate its volume.

There was a contrariety of evidence as to the condition of the road at the time of the change of it by the county court. Much of it conduces to prove that the ditch had greatly deepened and widened and the road so narrowed and washed into gullies as to make it in places well night impassible and its abandonment and the change of a part of the roadbed necessary. It is, however, by no means clear from the evidence that the bad condition of the road was caused by a defective or negligent construction of the ditch. On the contrary, we think it fairly inferable from the evidence that the bad condition of the road was caused by appellant's failure to keep the ditch in repair and protect the banks of the road, where underwashed by surface water, from sliding and falling into the road and filling the ditch.

It is insisted for the appellant that the trial court erred in overruling its demurrer to that part of appellee's answer that relied upon the authority given him by the county judge and overseer of the road to make the ditch; and that it was also error for the court to instruct the jury to find for appellee if they believed from the evidence he was authorized by these officials, or either of them, to make the ditch; it being the contention of appellant's counsel that such authority could have been given only by the Fiscal Court under section 4306, Kentucky Statutes, which provides:

"The Fiscal Court of each county shall have general charge and supervision of the public roads and bridges therein and shall prescribe necessary rules and regula-

tions for repairing and keeping same in order, and for proper management of all roads and bridges in said county under and subject to the provisions of this act. The public roads shall be maintained, either by taxation or by hands allotted to work thereon (or both) in the discretion of the Fiscal Court of the respective counties, as hereinafter provided.''

It is true that this section of the statute confers upon the fiscal court of each county full control and supervision of the public roads and bridges therein, and this power includes the right to prescribe necessary rules and regulations for repairing and keeping the roads and bridges in order. It is conceded, however, that, at the time the ditch complained of by appellant was made, the public roads of Hickman County were not maintained by taxation but by the work of all the able-bodied male citizens within certain designated boundaries, between the ages of eighteen and fifty years, and under the control of overseers appointed by the county court; and that the only rules and regulations prescribed by the fiscal court and then in force for maintaining the roads of the county required them to be maintained under the system mentioned. Section 4309, Kentucky Statutes, empowers the county judge to divide his county into road precincts, fix boundaries for the same, and to allot all the able-bodied male citizens within such boundaries between the ages of eighteen and fifty years to work on the roads within their respective precincts; and also to appoint in and for each precinct an overseer, a resident thereof, whose term of office must continue two years from the day of his appointment and until his successor shall be appointed, unless sooner removed by the county court.

Section 4310 provides that the appointment of overseers shall be made by order entered in the order book of the court, which order shall contain a description of the precinct allotted to each overseer; exempts overseers from service on juries and from poll tax for road and bridge purposes; and imposes, for failure to perform any duty required of them, a fine of from $5.00 to $25.00.

The duties and powers of overseers are defined by section 4311 which provides:

''The duties of the overseers shall be as follows, to-wit: In counties wherein the roads are worked by hands

allotted as hereinbefore provided, the overseers shall have charge of the roads and bridges in their respective precincts, construct bridges and work the roads in the manner directed by the fiscal court, shall summon the hands to work the roads in their precincts; superintend and direct said work and keep the road and bridges thereon free of obstructions and in good condition for travel; and may employ the necessary wagons, plows, scrapers, teams and such additional implements as may be needed to work said road; and shall report to the nearest justice of the peace or to the county judge any failure or refusal of any of the hands on his road to appear and do good work in obedience to his summons, and the number and length of time of such failure, and he shall also report promptly to the county judge any damage, injury or obstruction caused by any one to said road or the bridges thereon. And when the fiscal court has provided for paying hands for working on the roads, it shall be the duty of the overseers to report to the fiscal court the number of hands and the time worked by each who have worked on the roads of their respective precincts, and to furnish to each hand a certificate of the time so worked by him.''

Section 4308 empowers the fiscal court of any county to require all able bodied male citizens of the county over eighteen and under fifty years of age, except licensed ministers of the gospel and citizens of incorporated towns and cities, to provide themselves with necessary tools and implements and to work on the public roads of the county not exceeding two days in a week and any six days in each year, and in cases of unusual emergency the overseers may require the hands to work a greater number of days than six in a year or two in a week; and, further that, ''Any one assigned to work on a public road who shall, without good cause, fail to appear with proper implements, and do good work thereon, after having been notified for two days by the officer having supervision of the road, or by some one authorized in writing, by him, to give said notice, shall, on trial and conviction before a justice of the peace, or the county judge, be fined for each day he so fails to work, two dollars and fifty cents. All such fines, when collected, shall be used for road purposes, and upon failure to pay, a *capias pro fine* may issue.''

The only provision in, the statute on the subject of public roads which seems to confer upon the judge of the county court power to authorize the making of ditches is found in section 4305, which provides that he shall, "on information in writing by the supervisor or any overseer that a ditch is needed through the land of any person, or that a ditch, branch or creek through any person's land needs cleaning out, straightening, widening or opening in order to carry off the water from any part of the public road, and that the water cannot be carried off otherwise, notify such person, in writing, to have the same done; and upon his failure, after reasonable time, being reported by the supervisor or overseer, the judge shall issue a summons against such person citing him or them to appear at the next regular term of his court, which shall meet not less than five days thereafter, to show cause why the same shall not be done by the supervisor, overseer or contractor, and the cost thereof laid as a tax upon his or their property as other county taxes; and upon failure of such person or persons to show cause, the court shall order said work to be done, giving specific directions therefor; and the cost thereof shall be laid and collected as a tax on the property of said party or parties, and the work shall be paid for out of the county levy. But in all such cases the party or parties affected shall have due compensation for property taken and damages sustained, to be ascertained in the same manner and by the same proceedings as in fixing damages and compensation for property, and so forth, in opening roads."

It will be observed that the power given by this section to the county judge has no reference to the making of ditches upon public roads, but refers exclusively to ditching that may be required upon the lands of persons adjoining public roads, in order to carry off the water from the roads. It is, therefore, safe to say that the judge of the county court is without power to confer upon any person authority to make a ditch in a public road of his county; for which reason, although the county judge of Hickman County, as shown by his testimony and that of appellee, gave the latter permission to make the ditch complained of by appellant, such permission conferred upon appellee no authority or right to make the ditch. Besides, if the statute had conferred upon the county judge such authority, as the permission

which he attempted to give appellee to make the ditch was not given by an order entered of record in the county court, it, for that additional reason, conferred upon the latter no authority to make the ditch. But we are of opinion that the permission given appellee by the overseer of the road did authorize the digging of the ditch by him, for in the language of section 4311, supra; "In counties wherein the roads are worked by hands allotted as hereinbefore provided, the overseers *shall have charge of the roads and bridges in their respective precincts,* construct bridges and work the roads in the manner directed by the fiscal court, * * * superintend and direct said work and keep the road and bridges thereon *free of obstructions and in good condition for travel."* To do this the overseer may order out the hands within his boundary or such of them as may be needed. And if, upon discovering an obstruction such as a pond or mudhole in the road of which he has charge as overseer and in his judgment the obstruction can be properly removed by having a ditch made in and on the side of the road, and he finds a convenient person willing to make the ditch free of cost to the county, and the work can be done by such person quickly and efficiently without calling in additional hands within his boundary to assist him, we know of no reason why in such state of case the overseer may not authorize such person to perform the work of digging the ditch in the manner directed by him (the overseer). Such was the manner in which the ditch in question was made by appellee. It appears from his testimony and that of the overseer that the digging of the ditch was necessary to remove the obstruction from the road caused by the presence therein of the pond or mudhole, and also to prevent the diversion and flow in unusual quantities upon appellee's adjoining field of the water from the pond and also the surface water which, in times of excessive rains, collected on and ran from the road. It further appears from their testimony that the ditch was made in the manner authorized and directed by the overseer.

It does not matter that appellee asked permission of the overseer to make the ditch; it being sufficient that the making of it was necessary at the time and that it was made in the manner authorized by the overseer. If it had been made to appear from the evidence that the fiscal court had prescribed rules and regulations for re-

moving such obstructions by other means than that used by appellee and authorized by the overseer, it could not be said that the latter could violate such rules and regulations by authorizing the digging of a ditch, as was done in this instance. But no such fact was made to appear. This road, like all others in the county, was maintained by the allotment of hands and the work done by them upon the road; the hands being in charge of the overseer and the road under his control with apparently no other requirement than that the latter should exercise his best judgment as to the time and manner of having the work done. Among other duties he was charged with seeing to it that the road was kept free of obstructions and in good condition for travel, and here was an obstruction, the character of which, it appears, would soon have rendered travel upon the road impossible, which fact made its immediate removal a work of necessity. Under such circumstances there was no necessity for the overseer taking the advice of the fiscal court or of the county judge; nor did the law require him to do so. He had the right to act upon his own initiative and judgment and was clothed by the statute with the authority to do so. If the ditch thus made by the appellee by the authority of the overseer was not thereafter properly maintained by the fiscal court, or the overseer, and by reason thereof it years later became so widened as to make the roadbed too narrow for travel and cause gullies to form and exist in the road, it was not appellee's fault and there is no legal reason for holding him liable therefor.

The instruction to which appellant objects allowed the jury to find for appellee if they believed from the evidence that he had permission or authority from the overseer of the road to make the ditch and, as they so found, the verdict was authorized by the evidence. This conclusion renders it unnecessary for us to consider or pass upon the question of limitation raised by the appellee's answer. The judgment is affirmed.